UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MUNJED AL MUDERIS, an individual dba OSSEOINTEGRATION GROUP OF AUSTRALIA, and OSSEOINTEGRATION INTERNATIONAL PTY LTD., an Australian limited company,<br><br>Plaintiffs,<br><br>v.<br><br>FRED HERNANDEZ, an individual, and AMPUTEK, INC., a Nevada corporation,<br><br>Defendants. | Case No.: 2:19-cv-01002-APG-DJA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 44] |

The plaintiffs move for summary judgment on their claims. ECF No. 44.  The defendants did not respond.  The defendants have offered no evidence to rebut the plaintiffs' factual allegations or to create a genuine issue of material fact.  The plaintiffs have shown they are entitled to judgment as a matter of law.  Therefore, I grant the motion.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and

reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. Factual Background

The defendants have not answered or otherwise responded to the two sets of requests for admissions the plaintiffs served upon them. ECF Nos. 44-3, 44-4. Therefore, those requests are deemed admitted and "conclusively established." Fed. R. Civ. P. 36(a)(3), (b).

Plaintiff Munjed Al Muderis is an orthopedic surgeon who developed the osseointegration prosthetic limb (OPL). Al Muderis does business as Osseointegration Group of Australia (OGA). He also owns plaintiff Osseointegration International Proprietary Limited Pty Ltd. (OIP), which is a prosthetics company in Australia.

Al Muderis performed an OPL procedure on defendant Fred Hernandez. Hernandez began publicizing the results of his procedure, and the plaintiffs later hired him to continue acting as their spokesperson. The parties subsequently had a falling out and Hernandez began to work for the plaintiffs' competitors. Hernandez created and promoted defendant AmpUtek, Inc. as a distributor of products for the plaintiffs' competitors.

From April 2018 to September 2019, the defendants were paid at least $5,000 per month for promoting the plaintiffs' competitors through the use of false and misleading statements, including the statements identified below. From September 2019 to January 2020, the defendants were paid at least $25,000 for promoting the plaintiffs' competitors through the use of additional false and misleading statements.

The defendants created and published the Facebook.com posts that are attached to the complaint as Exhibits 1 through 4. ECF No. 1 at 21-34. The defendants have admitted that the

following statements they published on Facebook.com (collectively, the Statements) are false and misleading:

 a. [A competitor's] parts are registered with the [United States Food and Drug Administration].

 b. To have [a competitor] perform osseointegration, the "[c]ost is half of what one pays in Australia; yet patients undergo a comprehensive physio program that is headed by a physicist (doctor of rehabilitation) and a team of accredited medical professionals."

 c. "The Dutch have been performing Osseointegration surgery since 2009, using press fit implants. Their current implant is the newest device and most advanced on the market today!"

 d. "The letter [published on behalf of OIP] was not accurate, it was intended to deceive. The Dutch utilize ce marked devices . . . ."

 e. "[T]he letter [published on behalf of OIP] . . . is riddled with inaccurate statements and flat out lies. . . . [T]he OGA surgeon . . . regularly instructed me to post what he wanted and to refute any other opinion or team; whether it be factual or not."

 f. "Regardless of what Nick Birbas says; they DO have CE certification of their implant and have performed over 200 cases."

 g. "The Dutch have spent the last 10 years not focusing on numbers or making money but in collecting data, perfecting the technique and building a comprehensive physio program; an actual system centered on team care; which is led by an actual Dr (sic) of physical therapy (not simply a surgeons (sic) girlfriend who has less than a year experience as a PT; yet is head of the program in Australia)."

      h. "I smell a major cover up; as we have repeatedly asked for proof of CE certification or if authorized by the Australian government as a custom; proof it was actually approved . . . ."

      i. Osseointegration surgery can be performed in the United States just as easily as it can overseas and there is no need to travel overseas any longer to have the surgery performed.

The plaintiffs lost business as a result of the defendants' false and defamatory Statements. They made a net profit of $75,000 on each OPL surgery performed on patients in the United States and Canada. Plaintiff Al Muderis performed 30 osseointegration surgeries on patients from the United States and Canada in 2017 before the Statements were publicized. He performed 24 such surgeries in 2018 and only four in 2019. Given the exponential increase in patients in the years before 2018, it is likely that Al Muderis would have treated substantially more than 30 patients from the United States and Canada in 2018 and 2019. The decrease of 32 surgeries over the two-year period results in at least $2,400,000 in business losses as a result of the defendants' Statements.

The plaintiffs move for summary judgment on their claim of false advertising and unfair competition under the Lanham Act and on their defamation claim. They seek compensatory and punitive damages and injunctive relief.

**B.   Lanham Act Claim**

To prove a Lanham Act false advertising claim, the plaintiff must show:

(1) a false statement of fact by the defendant in a commercial advertisement about a product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, meaning it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured by of the false statement, either by direct diversion of sales from itself to the defendant or by a lessening of the goodwill associated with the plaintiff's products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id*.

The defendants have admitted that the Statements they published in their Facebook marketing materials are false. They have also admitted that they used those false Statements to market and advertise competing OPL products and services. Given the sharp decline in the number of patients the plaintiffs treated in the United States and Canada after the defendants' publication of false information, it is clear that the Statements were material and had the tendency to deceive a substantial segment of the target audience. The plaintiffs were directly harmed by the Statements, as evidenced by the loss of business after publication. The plaintiffs are entitled to recover $2,400,000 in lost business as a result of the defendants' violation of the Lanham Act.

In addition to the lost profits, the plaintiffs suffered damages to their reputation and goodwill as a result of the false Statements. Such damages are difficult to quantify. Thus, I also may award damages based on the defendants' profits. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). On that point, the Lanham Act allows a successful plaintiff, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages

sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117.  "This recovery is cumulative, that is, the Court may award [plaintiff] both its damages and [defendant's] profits." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir. 1994).

From April 2018 to January 2020, the defendants were paid at least $110,000 for promoting the plaintiffs' competitors through the use of the false and misleading Statements. Thus, the plaintiffs are entitled to recover an additional $110,000 as disgorgement of the defendants' profits.

I therefore award the plaintiffs $2,510,000 for their Lanham Act claim ($2,400,000 in actual damages and $110,000 as disgorgement of the defendants' profits).

**C.  Defamation Claim**

To prevail on a defamation claim in Nevada, a plaintiff must show: (1) a false and defamatory statement, (2) unprivileged publication to a third person, (3) fault, amounting to at least negligence, and (4) actual or presumed damages. *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005).  "A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *K-Mart Corp. v. Washington*, 866 P.2d 274, 281-82 (Nev. 1993).  A statement that suggests the plaintiff lacks "fitness for trade, business, or profession" is defamatory per se. *Id.* at 282.

The defendants admit that the following Statements (collectively, the Defamatory Statements) they published about the plaintiffs on Facebook.com are defamatory:

a. "The letter [published on behalf of OIP] was not accurate, it was intended to deceive."

  b. "[T]he letter [published on behalf of OIP] . . . is riddled with inaccurate statements and flat out lies. . . . [T]he OGA surgeon . . . regularly instructed me to post what he wanted and to refute any other opinion or team; whether it be factual or not."

  c. "The Dutch have spent the last 10 years not focusing on numbers or making money but in collecting data, perfecting the technique and building a comprehensive physio program; an actual system centered on team care; which is led by an actual Dr (sic) of physical therapy (not simply a surgeons (sic) girlfriend who has less than a year experience as a PT; yet is head of the program in Australia)."

  d. "I smell a major cover up; as we have repeatedly asked for proof of CE certification or if authorized by the Australian government as a custom; proof it was actually approved . . . ."

  Defendant Hernandez knew that the Defamatory Statements were false because of his previous employment with the plaintiffs and his current employment with the plaintiffs' competitors. Because the Defamatory Statements were aimed at and caused harm to the plaintiffs' business and profession, they are defamatory per se.

  The damages caused by the Defamatory Statements are mostly duplicative of the damages caused by the Lanham Act violations, and the plaintiffs are not seeking additional compensatory damages at this time. ECF No. 44 at 21. Therefore, I will not award any additional compensatory damages on this claim. However, given the nature of the defendants' conduct, an award of punitive damages against the defendants is appropriate

  "[P]unitive damages may be awarded when the plaintiff proves by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'" *Bongiovi v. Sullivan*, 138 P.3d 433, 450-51 (Nev. 2006) (quoting Nev. Rev. Stat. § 42.005(1)).

7

In deciding whether to award punitive damages, a court should "consider numerous factors including the defendant's financial position, culpability, and the extent to which this culpability offends one's sense of justice." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1053 (Nev. 2000).

The defendants acted with malice when publishing the Defamatory Statements. They knew the Defamatory Statements were false, yet they published them on the internet to harm the plaintiffs' reputation and to bolster the financial gain for the defendants and the plaintiffs' competitors. The defendants continued to publish the Defamatory Statements even after receiving cease-and-desist letters. An award of punitive damages in the amount of $100,000 is appropriate to punish and deter the defendants' conduct. This amount is less than five percent of the compensatory damages award, which is clearly reasonable under the circumstances.

### D. Injunctive Relief

The plaintiffs request a permanent injunction prohibiting the defendants from making further statements that violate the Lanham Act and defame the plaintiffs. "Nothing is clearer in the . . . law of commercial free speech than that false or misleading commercial speech is clearly subject to restraint." *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986) (citation and internal quotation marks omitted). *See also, MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations.").

The defendants' statements violated the Lanham Act. And the defendants have admitted that, "unless a permanent injunction is entered against [them, they] will continue to publish the [Defamatory] Statements on the Internet." *See* ECF No. 44-4 at 9 (Plaintiffs' Second Set of Requests for Admission, No. 52). The harm caused by future publications is very likely to be

difficult to calculate and prove. Harm to a plaintiff's reputation and goodwill is generally considered to be irreparable. *See Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1057 (C.D. Cal. 2011) (company's "damages would be difficult to value due to the unknown impact on [its] goodwill"). And the public interest favors restraining the publication of false and misleading statements, especially as widespread as is possible on the internet. Thus, a narrow injunction barring publication of false and defamatory statements in the future is warranted.

### E. Attorneys' fees

The plaintiffs request an award of their attorneys' fees. ECF No. 44 at 18-19. Under the "totality of the circumstances" presented here, I do not find this case to be exceptional so as to justify an award of fees under the Lanham Act. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). The damages and other relief I am awarding will sufficiently compensate the plaintiffs and sufficiently deter the defendants.

### F. Remaining Claims

The plaintiffs did not seek summary judgment on their claims of business disparagement (Third Claim for Relief) and tortious interference (Fourth Claim for Relief). ECF No. 1 at 15-18. Because those claims are pending, it is premature to enter final judgment at this time. If the plaintiffs do not seek dismissal of those claims, they are to confer with the defendants to prepare and submit a proposed joint pretrial order in compliance with Local Rules 16-3 and 16-4 by **February 8, 2022**.

## II. CONCLUSION

I THEREFORE ORDER that the plaintiffs' motion for summary judgment **(ECF No. 44) is GRANTED.** I award plaintiffs Munjed Al Muderis, dba Osseointegration Group of Australia,

and Osseointegration International PTY LTD the following relief against defendants Fred Hernandez and AmpUtek, Inc.:

1. Damages totaling $2,610,000 (calculated as $2,400,000 in compensatory damages for lost profits and loss of business, plus $110,000 as disgorgement of the defendants' profits, plus $100,000 in punitive damages).

2. A permanent injunction against each of the defendants (and anyone acting under their direction or control, current and future agents, and all persons in active concert or participation with the defendants who receive notice of this order) from publishing or causing the publishing, via the internet or any other medium, any of the following statements, or any variation thereof that conveys the message associated with any such statement:

    a. [A competitor's] parts are registered with the [United States Food and Drug Administration].

    b. To have [a competitor] perform osseointegration, the "[c]ost is half of what one pays in Australia; yet patients undergo a comprehensive physio program that is headed by a physicist (doctor of rehabilitation) and a team of accredited medical professionals."

    c. "The Dutch have been performing Osseointegration surgery since 2009, using press fit implants. Their current implant is the newest device and most advanced on the market today!"

    d. "The letter [published on behalf of OIP] was not accurate, it was intended to deceive. The Dutch utilize ce marked devices . . . ."

    e. "[T]he letter [published on behalf of OIP] . . . is riddled with inaccurate statements and flat out lies. . . . [T]he OGA surgeon . . . regularly instructed me to post what he wanted and to refute any other opinion or team; whether it be factual or not."

f. "Regardless of what Nick Birbas says; they DO have CE certification of their implant and have performed over 200 cases."

g. "The Dutch have spent the last 10 years not focusing on numbers or making money but in collecting data, perfecting the technique and building a comprehensive physio program; an actual system centered on team care; which is led by an actual Dr (sic) of physical therapy (not simply a surgeons (sic) girlfriend who has less than a year experience as a PT; yet is head of the program in Australia)."

h. "I smell a major cover up; as we have repeatedly asked for proof of CE certification or if authorized by the Australian government as a custom; proof it was actually approved . . . ."

i. Osseointegration surgery can be performed in the United States just as easily as it can overseas and there is no need to travel overseas any longer to have the surgery performed.

Dated this 5th day of January, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE